# CARROLL,

## JULY TERM, A. D. 1852.

---

## WEBSTER & a. v. HODGKINS.

In actions on torts connected with contracts, so much of the contract must be stated as is necessary to describe the wrong, and so much as qualifies the nature and character of the wrong, and no more.

In declaring upon a contract of warranty upon a sale, a sale must be set forth; but the terms of the sale are entirely immaterial and need not be stated.

If such terms are stated they must be proved, because they are descriptive of the sale, and cannot be struck out as impertinent.

If immaterial matter alleged in a declaration is proved, the proof of other immaterial matter, not so alleged, will not make a variance, even though it qualifies what is alleged.

In case for deceit by means of a false warranty, if the price of the article sold is stated as if paid in ready money, it will be no variance, if it be proved that the price is payable at a future day or in specific articles.

If a warranty is made at any time before the contract of sale is completed, it will be valid.

Writings purporting to contain a part only of a contract, as notes, receipts, bills of sale and the like, will not exclude parol evidence of other collateral parts of the contract.

THE first count in the declaration alleged that the plaintiffs "bargained with the defendant to buy of him a certain bay stud horse for the price of $525, and the defendant, by falsely and fraudulently warranting said horse to be sound, then and there sold said horse to the plaintiffs for the price aforesaid; whereas the said horse was then and ever since has been unsound and worthless; whereby the plaintiffs were

Webster *v.* Hodgkins.

deceived and defrauded." The second count stated a similar consideration, and a restricted fraudulent warranty.

W. E. Chase, called by the plaintiffs, testified that, July 6, 1848, at Conway, the plaintiffs bought of the defendant a bay stud horse for $525, and paid him two horses at $100 each, (one of which was S. Webster's and the other W. Webster's,) and two notes for $325, payable in one and two years, signed by them and by the witness, and that it was a part of the bargain that the defendant should take the two horses at $100 each, and said notes for the balance. The witness was requested by the Websters to sign for them, and at first refused, " but Hodgkins said he could fix it so that it would not be the least trouble; he could bill the stud to me and I could bill the two horses to him, and that would show that the stud was to be mine until the debt was paid;" and writings were executed accordingly, copies of which were made a part of the case. These writings were made and signed at the witness' counting-room; and at this time the stud horse and one of the other horses were a few rods off, at the stable of an innholder, and the other horse was at Saco, in Maine. The witness at first said that the writings were passed at the counting-room before going to the stable, but afterwards that he could not tell whether they were passed at the counting-room or at the stable, at the time of the delivery of the horses there. Chase wrote the bill of sale in the presence of the parties to this suit. Immediately after the papers were signed, the parties and Chase went to the stable, and Hodgkins delivered the stud horse to the Websters, and at the same time gave the warranty, which is alleged to be fraudulent and false, and the Websters delivered their horse to him. The other horse, which was then at Saco, subsequently came into the defendant's possession, but it did not distinctly appear by whose agency this was done. Until the time of the delivery of the stud horse at the stable, nothing had been said in relation to his soundness or unsoundness. The notes were sued and executions recov-

ered, were paid by the plaintiffs, and they have always had possession of the stud horse. The defendant's counsel contended that the legal effect of the writing was a sale by the defendant to Chase, and that it was not competent for the jury to find a sale and warranty to the plaintiffs; but the court overruled the objection, and directed the jury to determine to whom the sale was in fact made. He also contended that if the jury should find that the writings were made and passed at the counting-room, the defendant would not be liable upon a warranty afterwards; but the court ruled that though the writings were made and passed at the counting-room, yet the bargain between the Websters and Hodgkins was not so fully executed until the delivery at the stable, as to relieve the defendant from liability for a false and fraudulent warranty given before such delivery. To these rulings the defendant excepted, but the trial proceeded, and a large number of witnesses on each side testified in respect to the alleged unsoundness, and the defendant's knowledge of it. After all the evidence on both sides was closed, the defendant's counsel moved for a nonsuit, on the ground that the consideration of the defendant's contract was not truly stated in the declaration; but the plaintiffs' counsel, after taking time to consider, elected not to amend, and the court did not think it expedient to stop the cause upon such objection at that stage, and therefore denied the motion, and instructed the jury that they might consider there was no essential difference between the consideration stated in the writ and that stated by Chase. The plaintiffs' counsel contended that they were entitled to interest upon their damages from the date of the writ. The jury returned a verdict for \$112,50 damages and \$—— interest thereon from the date of the writ, subject to the opinion of the court as to said interest. The defendant moved to set the verdict aside because of the rulings and instructions aforesaid.

The writings were as follows:

" Conway, July the 6, 1848.

True B. Hodgkins    to    Wm. E. Chase,    Dr.

To one gray horse, four years old this spring,. . . . . . $100,00
To one black horse, eight years old this spring,. . . . .100,00
To two notes given by me,. . . . . . . . . . . . . . . . . . . . . .325,00
                                                            _____
                                                            $525,00

Conway, July 6, 1848, Recd Payt,

                                          Wm. E. Chase.

This may certify that I will send the mare next Monday.
                                          Wm. E. Chase."

" Conway, July 6, 1848.

Wm. E. Chase bot of True B. Hodgkins one stud horse, 6 years old this spring, for which I have received pt. two notes and two horses,. . . . . . . . . . . . . . . . . . . . . . . . . . $525,00

Conway, July the 6, 1848.

Recd payment as above,

                                          True B. Hodgkins."

*Dearborn,* for the defendant.

The action is founded on a special contract. Such special agreement must be declared on specially. The consideration and the terms of the contract should be truly stated. *Moore* v. *Ross,* 7 N. H. Rep. 534; 1 Ch. Pl. 298; *Clark* v. *Gray,* 6 East. 564; *Cutter* v. *Powell,* 6 D. & E. 324; *Cates* v. *Knights,* 3 D. & E. 444.

The evidence here does not support the declaration. It does not prove the consideration alleged. It shows that two horses and two notes were the consideration paid for the transfer of the horse. The bargain was in substance an exchange of horses, and not a sale for cash, as set forth in the declaration. The contract proved seems to us essentially different from that declared upon.

II. The contract was made with Chase, not with these plaintiffs. The writings executed at the time of the sale prove this fact. They contain the contract as it was finally

concluded by the parties, and parol evidence is inadmissible to vary or contradict the written agreement. The testimony shows that the written contract was in conformity to the actual verbal agreement. The parties agreed that Chase should become the contracting party instead of the plaintiffs. And these plaintiffs have no right to alter it, and substitute themselves for Chase. Chase was a responsible man; the plaintiffs were not so. If the horse then at Saco had not been delivered, the action for the non-delivery must have been against Chase.

III. The warranty proved made no part of the contract of sale or of exchange of these horses. The bargain was made and closed at Chase's counting-room. No warranty made any part of the contract as it was there made. No warranty was asked. None was talked about there. What was said afterwards had nothing to do with the agreement, more than it would if it had been said a year afterward. The bargain being complete at the counting-room, there was no new consideration afterwards, and a bare declaration of soundness, not part of the contract of sale, nor founded on any consideration, will not sustain the declaration. 3 Stark. Ev. 1660.

*Hobbs & Sanborn,* for the plaintiffs.

I. The action being in case, the whole gist and gravamen of the plaintiffs' action is the defendant's false and fraudulent warranty. In such a case, it is not necessary to set out the entire contract. *Hands* v. *Burton,* 9 East 349; *Cunningham* v. *Kimball,* 9 Mass. 65; 3 Stark. Ev. 1241. We allege a sale of the horse for so much money, and a false warranty; and we prove all that is necessary to support our declaration. The defendant agreed to receive, and he did receive, the two horses and the two notes as so much money in payment for the stud horse. Here is no variance.

If the action had been assumpsit founded on the contract, there would probably be a variance. But we do not claim

under the contract. We rest our claim entirely on the false warranty, that is, on fraud.

II. The warranty was at the time of the delivery at the stable, which was sufficient, even if the papers were delivered at the counting-room. It was all one transaction. The Websters delivered their horse at the same time. The bargain was not completed till the defendant subsequently received the horse, which was at Saco. The warranty must be made during the treaty, or at the time of the sale, or at least before the performance of the substantial terms thereof. Ch. Con. 458 & note 1; Story Con. § 529. The bargain was imperfect until the horse at Saco was delivered. *Butterfield* v. *Burroughs*, 1 Salk. 211. The writings do not purport to contain the whole contract of sale. Parol evidence was admissible to prove the warranty. *Hersom* v. *Henderson*, 1 Foster's Rep. 224; *Hogins* v. *Plympton*, 11 Pick. 97; *Bradford* v. *Manly*, 13 Mass. 139.

III. The question with whom the contract of sale was made, was submitted to the jury; and they have found that the contract was made with the plaintiffs, and not with Chase. The negotiation was with them, the horse was delivered to them, the consideration was paid by them, and the bills of sale were made in the name of Chase, as security to him for signing the notes.

BELL, J. The first question in this case relates to the supposed variance. The allegation is that the plaintiffs bargained with the defendant to buy of him a certain bay stud horse for the price of five hundred twenty-five dollars, and the defendant, by falsely warranting the horse to be sound, sold him to the plaintiffs for that sum.

The evidence is, that the plaintiffs bought of the defendants a bay stud horse for five hundred twenty-five dollars, and paid him two horses at one hundred dollars each, and notes for three hundred twenty-five dollars; and that it was part of the bargain that the defendant should take the two

horses at one hundred dollars each, and said notes for the balance.

Upon this supposed variance there was a motion for a nonsuit, which was denied.

The general principle is, that where an action is founded upon a contract, the contract must be truly stated in substance. But it is sufficient to state those parts of the agreement, the breach of which is complained of, and it is not necessary to state in the declaration, other parts, not qualifying nor varying in any respect those, the breach of which is complained of, and which prescribed the duty to be performed, and the time, manner and other circumstances of its performance. But the consideration must be stated truly, and no part of the entire consideration for any promise can be omitted. *Miles* v. *Sheward,* 8 East 7 ; *Clark* v. *Gray,* 6 East 567. No part of an agreement must be omitted, which qualifies or varies the sense and legal effect of the part set forth. *Hawel* v. *Richards,* 11 East 633. If the consideration or the contract proved vary from that stated in the pleadings, the plaintiff will be nonsuited. A trivial variance is fatal, because it does not appear that the contract given in evidence is that on which the plaintiff declares. It is matter of description. *Bristow* v. *Wright,* Doug. 669 ; *Drury* v. *Twiss,* 4 D. & E. 560 ; *Peppin* v. *Solomons,* 5 D. & E. 448 ; *Penny* v. *Porter,* 2 East 4 ; *Dustan* v. *Tuthan,* 3 D. & E. 67.

Whenever a contract is described, a variance will be equally fatal, whatever may be the form of the action, whether upon the contract itself, or upon some collateral matter, or in an action in form *ex delicto,* (*Bristow* v. *Wright,* Doug. 667 ; *Ditchburn* v. *Spacklin,* 5 Esp. 231,) unless the whole can be struck out, without impairing the plaintiff's right of action. *U. S.* v. *Porter,* 3 Day 283 ; *Jerome* v. *Whitney,* 7 Johns. 521.

If an entire contract constitutes the foundation of the action, every part of it must be correctly stated. If a con-

tract consists of several parts, only so much needs to be stated as the action is founded upon. To many kinds of contracts there are other incidental contracts, which may be the foundation of an action, where the principal contract is not broken. In declarations upon such contract, it is of course necessary to state the incidental contract fully, with all its qualifications, and so much of the principal contract as is necessary to make plain and intelligible the incident, and as may in any way qualify the construction and effect of such incident. Any stipulations of the principal contract, of a collateral character, and which do not relate to nor affect the incident, are wholly immaterial and unnecessary to be stated. Whatever is necessary to entitle the plaintiff to recover, must be set forth precisely in accordance with the proof; but matters which are no necessary part of the plaintiff's title, and which do not affect those which are so, should be *omitted.*

In the same manner there are torts of various kinds which are connected with contracts, and in a manner incidental to contracts, where, in order to state and describe the wrong or injury done, it is necessary to set forth the contract with which it is connected. And here the same rule applies. So much of the contract must be stated as is necessary to make the wrong intelligible, and *so much as may in any* way qualify the nature and character of the wrong, and nothing more.

If in the present case the defendant had sued for non-payment of the price the plaintiff had stipulated to pay, he must set forth truly the entire consideration for the plaintiff's promise, and all the provisions of the contract upon which the action was brought, and all others affecting the meaning and construction of those provisions; but he would not be bound to set forth any other part of the agreement. So if the plaintiff had sued for the non-delivery of the horse, if there had been a breach of the contract in this respect, he must have stated truly the consideration of the defend-

ant's agreement, and so much of that agreement as was material to his right of action, and there he might properly stop.'

This principle is clearly illustrated in the case of *Miles* v. *Sheward*, 8 East 7, where the plaintiff declared that in consideration of his returning to the defendant an unsound horse, which the defendant had before sold him, the defendant promised to deliver to him another horse which should be worth £80, and be a young horse; and alleged a breach in both these respects; and the declaration was held sufficient, though the proof was not only of a promise that the horse should be worth £80, and be a young horse, but that it should be warranted to be sound, and never to have been in harness. Here the omission was immaterial, because the part omitted was in no way material to the right of action, upon which the suit was brought.

*Alvord* v. *Smith*, 5 Pick. 232, is of the same class. The count sets forth a promise to pay arrearages; the evidence is of a promise to pay these, *and one hundred dollars*. *Held* that a proof of a promise beyond what is averred, but embracing that also, cannot prejudice the defendant. It is not setting forth a different promise, but failing to set forth the whole, to the prejudice of the plaintiff only. It is in this respect like an action of covenant, in which, though there are many covenants, the plaintiff may sue for the breach of one. *Non constat*, the other branch of the promise has not been performed. At any rate, the plaintiff does not claim any thing on account of it.

*Porter* v. *Talcott*, 1 Cow. 359. The plaintiffs declared, setting forth an exchange of vessels between them and the defendant, and that the defendant agreed to pay $6500 as the difference or boot. The proof was, that the agreement was to pay in notes at four, six and eight months, but there was no agreement that the notes should be received as pay-

ment. The suit being brought after the notes fell due, it was held that the omission to state this part of the contract made no variance.

*Brown* v. *Atwood,* 7 Greenl. 356. When S. sold a vessel to A., who promised in consideration thereof to pay B. a debt due from S. to him, upon which promise B. brought his action against A., it was held sufficient for the plaintiff to set forth so much of the promise as inured to his own benefit, and that proof of other and further particulars of the contract, did not affect the action.

*Allen* v. *Goffe,* 13 Verm. 148. Matters of description in a declaration, though immaterial, must be proved precisely as laid; but if the evidence conforms to the declaration, it is no variance that the evidence contains more *immaterial* matter than the declaration.

Of the incidental contracts, which in their nature depend upon a principal contract, perhaps there is none more common than the contract of warranty. It is a contract incidental to a sale, letting or hiring—to a contract executed alone. Upon a contract to sell at a future day, there may be an agreement to warrant, but this agreement is a very different contract from a warranty. It will be satisfied if the contractor makes the warranty, though it is instantly broken; and the remedy for the defect warranted against, must be sought upon the warranty itself. In declaring, then, upon a contract of warranty and its breach, it is indispensable to set forth a sale; but the terms of the sale are entirely immaterial. The party to whom property has been warranted has the same right to recover upon a failure of title, or upon the property proving of a different quality from what it was warranted to be, whether it was purchased upon a long credit or a short, for a high or low price, or whether it was paid for in cash or by exchange. None of

9

these conditions of the executory contract on which the sale was made—of the contract to sell—are in any way material to the contract of warranty, which is an incident of the perfected sale, of the executed transfer. It is therefore unnecessary to state any of the conditions of the sale. If the price, or any of the other terms of the sale is stated, it must be proved, though it is immaterial, and need not have been inserted; yet because it is descriptive of the sale, it cannot be struck out as impertinent. But the introduction of one immaterial matter will not cause a variance if it is supported by the proof, because other matters equally immaterial are shown by the proof, which are not alleged in the declaration.

We find many cases supporting this view of the law on this subject.

*Brown* v. *Fry*, Sel. N. P. 663. Where a plaintiff declared on a warranty of a horse bought with money, and produced a receipt for the sum containing the warranty, and it appeared that in fact he had given a mare in exchange, at a certain valuation, it was held that there was no variance, as the defendant admitted by the receipt that he had taken the mare as money.

*Hands* v. *Burton*, 9 East 349. Proof that the defendant agreed to sell his horse, warranted sound, to the plaintiff for £31 10s., and at the same time agreed that if the plaintiff would take the horse at that value, he, the defendant, would buy another horse of the plaintiff's brother for £14 14s., and that the difference only should be paid to the defendant, will support a count charging only that in consideration that the plaintiff would buy of the defendant a horse for £31 10s., the defendant promised that it was sound, and that in fact the plaintiff did buy the horse for that price, and did pay to the defendant the said £31 10s.

*Saxty* v. *Wilkin*, 11 M. & W. 622; 7 Jur. 704; 12 L. J.

Webster *v.* Hodgkins.

N. S. 381; 1 D. & L. 281. In assumpsit, the declaration alleged that in consideration that the plaintiff would buy of the defendant a horse, at and for a certain price or sum, to wit: the sum of £56 16s., the defendant promised that the horse was sound. Breach, that he was unsound. Plea, *non assumpsit* and a traverse of the unsoundness. At the trial it was proved that the plaintiff, who was a tailor, agreed to give the defendant for the horse £55, and a new pair of breeches, value £1 16s. *Held,* that this was no variance.

In actions for torts connected with contract, the contract must be proved as alleged. *Weall* v. *King,* 12 East 452; *Lopez* v. *De Tastet,* 4 Moore 266; 1 B. & B. 538; *Symonds* v. *Carr,* 1 Camp. 361, 2 and note a; *Maine* v. *Bailey,* 15 Conn. 298; *Carlisle* v. *Trears,* Cowp. 671. But in declaring for a fraud in a sale of a chattel, though the sale must be stated, it is not necessary to set out either the contract of sale or the consideration. *Barney* v. *Dewey,* 13 Johns. 224; *Corwin* v. *Davidson,* 9 Cow. 22; *Benden* v. *Manning,* 2 N. H. Rep. 291.

In the cases which establish the principle, that if allegations descriptive of a contract, necessarily set forth in a declaration, are introduced, they must be proved as stated, although they are of themselves immaterial to the plaintiff's right of action, we find the principle every where recognized that where it is necessary to state a contract, as a part of a cause of action for a wrong, it is not necessary to set forth any more of that contract than is necessary to establish the plaintiff's right of action, and to render the statement of his case intelligible; and that if more be stated of the details connected with such contract than is necessary, though they must be proved as stated, they do not draw with them the necessity of stating any other circumstances of the contract; nor will the proof of such additional particulars occasion any variance.

The doctrine that allegations must be proved, when they are entirely immaterial to the plaintiff's right of action, because they are descriptive of the terms of a contract, has been often doubted, and we are of those who think that it is not supported by common sense, nor consistent with many well settled principles of the laws of pleading; but it is not material in this case, because the view which we take that the omission to state in a declaration such particulars of a contract as are immaterial to the plaintiff's right of action, makes no variance when those particulars are shown in the proof, is entirely consistent with it.

The case of *Bristow* v. *Wright*, Doug. 665, is the leading case. Bristow brought his action against the defendants, as sheriff of Middlesex, for levying upon and selling the goods of a tenant, without paying a year's rent, which they had notice was in arrear to the plaintiff as lessor. The plaintiff in his declaration set forth a demise from year to year at a certain rent, *payable by four quarterly payments.* He was unable to prove any stipulation relative to the times of payment. It was held by Lord *Mansfield* and the court, that it was not necessary to allege this part of the lease that relates to the time of payment, but since it was alleged, it was necessary to prove it. This was to hold substantially that if nothing had been said in the declaration as to the times of payment, and it had appeared that the rent was payable *quarterly*, it would not be a variance, because the gist of the action was that the rent was in arrear, and the times of payment immaterial.

*Cudlip* v. *Rundle*, Carth. 202, cited Doug. 665. In an action against a tenant for negligently keeping his fire, by which the house was consumed, the plaintiff alleged a lease for seven years; his proof was of a lease at will, and the variance was held fatal, though he would have been equally liable on a lease at will. Here it is evident the terms of the lease were not material, and though the tenancy must be stated, the conditions of the demise might be well omitted.

The cases of *Savage* v. *Smith*, 2 Bla. 1101, and *Shute* v. *Harnsey*, 1 Doug. 668, cited in *Bristow* v. *Wright*, support the same position.

*Cunningham* v. *Kimball*, 7 Mass. 65. The declaration set forth that the defendant, to induce the plaintiff to exchange his mare and a pair of steers for the defendant's mare, which was unsound, and a note or piece of paper, fraudulently affirmed that his mare was sound, by which the plaintiff was induced to exchange, &c. The evidence was, that the defendant agreed to deliver to the plaintiff a mare, not then present, safe and sound, and a paper, which the witness did not examine, and was to have of the plaintiff a horse, which was then delivered, and a pair of steers, of the plaintiff, *and the plaintiff was to keep the steers one week for the defendant.*

It was objected that there was a variance, since nothing was alleged in the declaration relative to keeping the steers. *By the court.* "If the action had been founded on the contract, and the gravamen had been the non-performance by the defendant of his part of it, there would have been some weight in the objection. But the whole gist and foundation of the action is the defendant's false and fraudulent affirmation, and in this view the variance is not such as to make it necessary or fit to send the cause to a new trial."

In substance, this case may be regarded as deciding that in declaring for a fraud upon a sale or exchange, it is not necessary to set forth any of the particulars of the contract, except such as are necessary to support the action; and if such further particulars are shown by the proof, they make no material variance. This principle is directly supported by all the cases before cited of actions upon warranties, which stand upon the same reason. It was not necessary for the plaintiff to set forth the manner in which the price of the horse was to be paid; nor was it a material variance that the evidence showed that those payments were to be made otherwise than in ready money. To allege and prove

a sale was essential to support an action for fraud in the sale, but it is wholly immaterial what the terms and conditions of the payment of the purchase money were, since the fraud would be none the more or less, whatever they were; and it was therefore unnecessary either to state or prove any thing on that point. And any testimony about that matter would be immaterial.

The forms of pleading sustain this view. The declaration for deceit in substance alleges that the plaintiff bargained to buy of the defendant a horse, and the defendant, by then and there falsely and fraudulently warranting said horse to be sound, induced the plaintiff to buy of him said horse for a large sum, to wit, $——; whereas the horse was not sound, &c. 2 Chitt. Pl. 276, 277; Prec. Dec. 190, 191, 192; 8 Went. Pl. 366, 367, 368; 2 Went. Pl. 127, 200.

The declaration on a warranty in substance is, that in consideration that the plaintiff would buy, &c., a certain gelding of the defendant for the sum of $ ——, promised the plaintiff that the said gelding was sound; and the plaintiff, relying on said promise, did buy, &c., and pay for the same; but the said gelding was then and there unsound, &c. 2 Ch. Pl. 100, 101, 102; Prec. Dec. 189, 190, 192; 2 Went. Pl. 126, 202, 203.

We have found no precedent in which any particulars or details of the contract of sale or exchange are set forth in a declaration, either upon a fraud or a warranty. This seems to us very conclusive to show that it is not necessary to set forth more than the fact of the sale.

II. It is objected that the warranty is not shown to have been made upon the sale, but was merely talk of the parties after the sale was completed. The evidence tends to show that the warranty was made either when the horse was delivered, or immediately before; that is, while the contract of sale was in process of being completed. This is all that the law requires. The instruction of the court, that though the writings were passed at the counting-room,

yet the bargain was not so fully completed until the delivery of the horse at the stable, as to relieve the defendant from a warranty made before the delivery, was correct. *Butterfield* v. *Burroughs*, 1 Salk. 211.

III. The writings did not contain the entire contract, and parol evidence of the warranty was admissible. *Hersom* v. *Henderson*, 1 Foster's Rep. 224. Where writings are made for the purpose of carrying into effect a contract, or of stating the terms and stipulations of a contract, the general principle is, that the writings are presumed to contain the whole contract of the parties.

But though a general rule, it is not universally true. It may be shown that the writings were made for some partial object, and not with the object of comprising the whole contract. *Allen* v. *Pink*, 4 M. & W. 140 ; *Hogins* v. *Plympton*, 11 Pick. 99. Thus, for example, a party to a sale may give his note for the price agreed upon. This, it is evident from the nature of the document, is not a writing comprising the whole terms of the contract between the parties, and either party may nevertheless go into evidence to show what other agreements were made. It is upon this principle that different instruments are construed together as parts of one contract, where it is necessary in order to carry into effect the agreement of the parties. *Odiorne* v. *Sargent*, 6 N. H. Rep. 401. So there is at most a very slight presumption that a mere receipt for money contains the whole contract between the parties. In most cases it purports to contain evidence of a payment upon some account or contract, to which reference is made without showing any thing of the nature of the account, or of the terms of the contract. But receipts for money are never conclusive. They are open to be explained, varied and contradicted by parol evidence, and their execution does not in any way disable a party to show by other evidence what were the terms and conditions of the contract to which they relate. This principle has been recently recognized by this court in *Hersom* v.

*Henderson*, before cited, and in *Edgerly* v. *Emerson*, 3 Foster's Rep. 555, following the cases of *Wallace* v. *Rogers*, 2 N. H. Rep. 506, and *Pritchard* v. *Brown*, 4 N. H. Rep. 397, and a great number of cases elsewhere; and its soundness cannot be questioned, however its applicability to some of these cases may be questioned.

It is apparent that the two receipts, which make part of this case, besides being open to contradiction, or variation as receipts, by no means do contain or purport to contain the entire contract between these parties; and they therefore furnish no reasonable objection to the admission of evidence showing with whom the contract was made, or any additional terms comprised in it. Evidence showing that the contract was in fact made with the plaintiff, though, for Chase's security, the bill of sale was made directly to him, was properly admitted, just as the evidence was received as to the warranty; and the conclusion of the jury upon the evidence was decisive of that matter.

*Judgment on the verdict.*